UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY JONES,<br><br>             Plaintiff,<br><br>      v.<br><br>CASTILLO, *et al.*,<br><br>             Defendants. | Case No. 1:24-cv-00831-EPG (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO ASSIGN A DISTRICT JUDGE AND TERMINATE CERTAIN DEFENDANTS ON THE DOCKET<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED ONLY ON PLAINTIFF'S EQUAL PROTECTION CLAIMS AGAINST DEFENDANTS CORREA AND CASTILLO<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS |

   Plaintiff Jeremy Jones proceeds *pro se* and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983. (ECF No. 1, 6). Generally, Plaintiff alleges that various prison officials have violated the Americans with Disabilities Act (ADA), denied him medical care, subjected him to unconstitutional conditions of confinement, denied him equal protection of the law, and retaliated against him.

   The Court screened Plaintiff's initial complaint and determined that Plaintiff stated cognizable claims that Defendants Correa and Castillo denied him equal protection of the law in violation of the Fourteenth Amendment based on allowing inmates of different races to wear their sunglasses while not permitting Plaintiff to wear his sunglasses. (ECF No. 7, p. 22). However, Plaintiff's complaint failed to state any other cognizable claim. The Court reviewed

1

the legal standards for the claims that Plaintiff had asserted and indicated where Plaintiff failed to provide sufficient facts to assert such claims. The screening order gave Plaintiff the options of proceeding on only his cognizable claims, filing an amended complaint, or standing on his complaint and having it reviewed by a district judge. Plaintiff chose to amend his complaint, which is now before the Court for screening.

After reviewing the amended complaint, the Court again concludes that Plaintiff's only cognizable claims are that Defendants Correa and Castillo denied him equal protection of the law in violation of the Fourteenth Amendment. Thus, the Court will recommend that these claims proceed and that all other claims and Defendants be dismissed without further leave to amend.

Plaintiff has thirty days from the date of service of these findings and recommendations to file any objections.

I.  SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). Because Plaintiff is proceeding *in forma pauperis* (ECF No. 6), the Court may also screen the complaint under 28 U.S.C. § 1915, which requires a court to dismiss a case if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from an immune defendant. 28 U.S.C. § 1915(e)(2)(B)(i-iii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

(quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II. SUMMARY OF PLAINTIFF'S AMENDED COMPLAINT

Plaintiff indicates that the events at issue in his amended complaint occurred at Kern Valley State Prison.[1] He names the following Defendants: (1) C/O Castillo; (2) C/O Correa; (3) C/O Solez; (4) Sgt. Escebedo; (5) Sgt. Viegh; (6) Cpt. Goyce; (7) Associate Warden/ADA Coordinator Castro; (8) Chief Medical Executive Dr. Singh; (9) Chief Physician/Surgeon Dr. Igbinosa; (10) Correctional Doctor, Dr. Hamas; (11) Correctional Dentist, Dr. Mai; (12) Senior Psych Specialist Dr. Hamil; (13) Inmate Appeals Analyst A. Mejia; (14) Healthcare Compliance Analyst M. Navarro; (15) Healthcare Grievance Coordinator S. Hernandez. Additionally, Plaintiff lists unnamed Does as Defendants "to be added later."[2]

Plaintiff's amended complaint lists four claims.

**Claim 1**

For his first claim, Plaintiff states that he was discriminated against in violation of the ADA, denied medical care, and denied equal protection of the law. Plaintiff refers to another case he has filed in this District (*Jones v. Coree, et al.*, 1:22-cv-01119-SKO),[3] stating that he has extreme sensitivity to light (he asserts that he has photophobia and photosensitivity), which causes him to suffer severe migraine headaches. In order to cope, Plaintiff could only exit his

---

[1] For readability, minor alterations, like altering capitalization and correcting misspellings, have been made to some of Plaintiff's quotations without indicating each change.

[2] Because Plaintiff no longer lists previous Defendants Pelayo, Razo, Johnson, or Alcazar in his amended complaint, the Court will direct the Clerk of Court to terminate them from the docket.

[3] Plaintiff's second amended complaint is pending review in 1:22-cv-01119-SKO.

3

cell wearing his personal white shades, and he was known as "White Shades."

One day, Plaintiff was to be transported for a neurologist appointment with his white shades on. When he was in the holding tank, he could hear Defendant Correa "being chewed out by his supervisor." When Correa came to the door, Plaintiff happened to be the next name called. Correa saw that Plaintiff was disabled and in a wheelchair and "he immediately took his frustrations out on the Plaintiff and began badgering him," stating, "Why are you talking to me with your shades on? I don't like you looking up at me (referencing the wheelchair) with your shades on! Take'em off or you won't be going!" Plaintiff pleaded with Correa, generally explaining the need to wear his shades, but Correa just slammed the door in Plaintiff's face.

At the first opportunity, Plaintiff asked to speak to a sergeant, and after pointing out that none of the able-bodied inmates were asked to remove their shades and explaining his symptoms from migraines, Plaintiff "was immediately ordered to be escorted to his appointment by the sergeant." Plaintiff asserts that, just "because the sergeant rectified the situation . . . does not absolve C/O Correa of the Title II violation of the ADA for discrimination."

After "seeing how angry C/O Correa had become in not succeeding in depriving the Plaintiff of proper medical care," Plaintiff talked to the neurologist to make sure he made it to follow-up appointments and also appointments with the optometrist to get his prescription shades. Dr. Belaga gave a simple directive, "Permit him to shield his eyes from ambient illumination."

However, despite this directive and the incident with the sergeant, the situation got worse. Plaintiff describes an incident in which Correa berated "Plaintiff to take his shades back to his cell all while escorting able-bodied inmates of Hispanic descent" who "were allowed to wear theirs time and time again."

Plaintiff states that he was "left on the patio, the missed appointments kept piling up and the necessary care to find the cause and any remedy just kept being delayed."

Plaintiff asserts that Defendants Solez (Correa's partner) is liable because Solez was "entrusted to uphold the law." Likewise, Plaintiff contends that Defendants Castillo, Escebedo,

4

and Viegh are liable for allowing unspecified discrimination to continue and for actively participating in unspecified discrimination that "turned into deliberate indifference." He states that "each named Defendant is liable for deliberate indifference because each Defendant forced [him] to choose between torturing himself with the unbearable pain that keeps him bedridden for days or forfeit the right to be seen."

Plaintiff states that Defendant Castillo, who is the senior officer and Union Rep who runs the patio along with Escebedo and Viegh, refused to intervene when shown Dr. Belga's report. Castillo, Escebedo, and Viegh "aided and abetted" Correa and Solez "by conspiring with Dr. Hamas" and Doe Defendants to "cherry-pick" Plaintiff's medical file, "violating HIPPA to quote statements prior to [his] diagnosis to perpetuate deliberate indifference." Castillo, Escebedo, and Viegh became active participants when they gave the order for Correa and Solez to leave without Plaintiff under unspecified circumstances.

**Claim 2**

For his second claim, Plaintiff states that he was retaliated against. Plaintiff asserts that when Correa became aware of his "filing multiple appeals, the discrimination and deliberate indifference became even more blatant, with [Correa] now berating the Plaintiff to take his shades back to his cell, when before he was only ordered to remove them, while unchaining inmates of Hispanic descent, racially escalating the situation with their shades on." Plaintiff states that Correa's retaliatory intentions can be seen because he escorted Plaintiff to CTC with his white shades on without incident, just to berate, make fun of, and taunt the Plaintiff the entire time, laughing that it was only a dental appointment that he "didn't care about." It was Correa's sole purpose to keep the Plaintiff from ever seeing the neurologist or the optometrist for medical care because Correa wanted to inflict as much pain as possible.

Plaintiff states that Castillo's retaliatory intent can be seen because he said, "Since you're pushing policy, I'm pushing policy." From this point on, "Plaintiff and other Black inmates," were berated and harassed to remove their sunglasses while other races were allowed to wear theirs. Castillo told others to "blame Jones," in an "attempt[] to incite violence against the Plaintiff by having him stabbed."

Plaintiff generally indicates that, because he cannot wear his shades, he is being denied access to the patio, religious services, court, and medical care. Plaintiff indicates that Castillo, Defendant Goyce, and Defendant Igbinosa, were involved with a policy to not allow shades in Medical for the sole purpose of weaponizing the policy against Plaintiff "to inflict as much pain as possible." He appears to indicate that he was written up for not signing refusal forms relating to not attending medical appointments.

**Claim 3**

For his third claim, Plaintiff claims that he was subject to unconstitutional conditions of confinement. He challenges the implementation of "underground policies." Specifically, he states that there has never been a policy of "no headwear on the patio," although he acknowledges that inmates are required to remove headwear in chow hall, chapel, program office, and Medical. He says it is disrespectful not to allow a man to cover his head from the elements.

He asserts that Goyce, as the Yard Captain who oversees and signs off on policies is liable. Further, he asserts that Castillo, as the senior officer and Union Rep, was in charge of carrying out the underground policy in which he contends, without elaboration, that "a lot of inmates got assaulted."

Plaintiff states that the "no shades" policy was pure retaliation by Castillo and Correa, and put into policy by Goyce.

**Claim 4**

For his fourth claim, Plaintiff claims that he was denied adequate medical care. He directs his allegations at RAP (presumably this stands for reasonable accommodation panel) committee members: Defendants Castro, Dr. Singh, Dr. Igbinosa, Dr. Mai, A. Mejia, M. Navarro, and M. Hamil. He states that these Defendants refused to follow the neurologist's directive to permit him to shield his eyes from ambient illumination by issuing him an emergency temporary chrono allowing him to wear his personal shades to get to the optometrist to get prescription glasses with the proper tint and to follow up with the neurologist to have the correct dosage prescribed of his new medication. Instead, they allowed Custody to dictate

6

medical treatment by concocting a new rule of no shades in Medical even conspiring with Custody to "cherry pick" the Plaintiff's medical file to deny him adequate medical care in violation of HIPPA.

Plaintiff appears to indicate that Defendants Dr. Hamas, Castillo, Jane Doe 1, Sgt. Viegh, Jane Doe 2, and Sgt. Escebedo were involved in him not getting the chrono.

Plaintiff also appears to allege that the certain Defendants permitted him to be written up for not removing his shades and for not signing a refusal form regarding not attending appointments.

Plaintiff identifies his four claims as arising under Title II of the ADA, the Eighth Amendment, the Fourteenth Amendment, and the First Amendment.[4]

As for relief, Plaintiff seeks monetary damages and injunctive relief.

### III.   ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A.   Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or

---

[4] The Court will confine its review to the legal claims that Plaintiff lists in his complaint. For example, it will not address isolated references to Defendants violating HIPPA.

federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### B. Title II of the ADA

Within his first claim, Plaintiff alleges that certain Defendants violated the ADA in connection with his allegations that he faced discrimination because he was in a wheelchair. (ECF No. 12, p. 12).

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Public entity" extends to state prisons and thus Title II applies to prisoners. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210, (1998) ("State prisons fall squarely within the statutory definition of "public entity," which includes 'any department,

agency, special purpose district, or other instrumentality of a State or States or local government.'") (quoting 42 U.S.C. § 12131(1)(B)).

> To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability.

*Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

"The term "disability" means, with respect to an individual-- (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1)(A)-(C).

The ADA does not provide a basis to sue government officials in their individual capacities. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA . . . .").

Ordinarily, a plaintiff is not entitled to monetary damages against defendants in their official capacities. *Aholelei v. Department of Public* Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) ("The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities."). However, the Eleventh Amendment does not bar ADA suits against state officials in their official capacities for injunctive relief or damages. *See Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791, 792–93 (9th Cir. 2004); *Bozeman v. Santoro*, No. 1:17-CV-01247-DAD-GSA (PC), 2019 WL 4273927, at *4 (E.D. Cal. Sept. 10, 2019).

"To recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) (footnote omitted). Deliberate indifference is the appropriate standard to apply in determining whether intentional discrimination occurred. *Id.* "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at

9

1139. "[I]n order to meet the second element of the deliberate indifference test, a failure to act must be the result of conduct that is more than negligent, and involves an element of deliberateness." *Id.*

Liberally construed, the following allegations in the complaint implicate an ADA claim: (1) Correa took his frustrations out on Plaintiff because he was in a wheelchair, telling him to take his sunglasses off or he would not be going to his medical appointment; and (2) Solez, Castillo, Escebedo, and Viegh are liable for allowing discrimination to continue and actively participating in it.

As an initial matter, to the extent that Plaintiff sues any Defendant in their individual capacity, he cannot maintain an ADA claim. *Hernandez v. Marcelo*, No. 1:19-CV-01219-NONE-JLT (PC), 2020 WL 6075648, at *3 (E.D. Cal. Oct. 15, 2020), *report and recommendation adopted*, 2021 WL 1164400 (E.D. Cal. Mar. 26, 2021) (concluding that a prisoner's individual capacity claims under the ADA were not cognizable).

As for Plaintiff's first allegation, he generally asserts that Correa does not like him because he is in a wheelchair and Correa told him to take off his sunglasses or else he would not be going to a medical appointment.[5] (ECF No. 12, pp. 12). However, even assuming this were true, there is no indication that Plaintiff was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, which is necessary to state an ADA claim. Importantly, according to Plaintiff, he spoke to a sergeant, who "immediately ordered [Plaintiff] to be escorted to his appointment." *Id.*

Notably, the Court advised him of this same deficiency in its screening order, and granted Plaintiff leave to amend after identifying the relevant standards for an ADA claim. (ECF No. 7, pp. 14-15). However, Plaintiff included the same allegations for this claim, summarily asserting that "because the sergeant rectified the situation . . . does not absolve C/O Correa of a Title II violation of the ADA." (ECF No. 12, p. 12). However, this is a legal assertion, which the Court is not bound to accept. *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a

---

[5] For purposes of screening, the Court treats Plaintiff's reference to being in a wheelchair as sufficiently identifying a qualifying disability for purposes of an ADA claim.

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

As for Plaintiff's second set of allegations, he contends that Solez, Castillo, Escebedo, and Viegh are liable for allowing discrimination to continue and actively participating in it. *Id.* Generally, Plaintiff indicates that they were involved in Correa's alleged discrimination, ordered Correa to leave without Plaintiff for some unspecified destination, and played some part in him not being permitted to wear his sunglasses. However, once again, Plaintiff fails to identify what services, programs, or activities he was denied based on his disability.

For these reasons, Plaintiff fails to state any ADA claim against any Defendant.

### C. Deliberate Indifference to Serious Medical Needs

Within his first, second, and fourth claims, Plaintiff asserts that certain Defendants violated the Eighth Amendment by denying him medical treatment. (ECF No. 12, pp. 11-16, 18-19). While his allegations vary, generally Plaintiff indicates that Defendants denied or delayed him medical care based on circumstances involving the use of his sunglasses.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil

recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

With these standards in mind, Plaintiff states that Correa told him to take off his shades or he would not be going to an appointment with a neurologist. However, accordingly to Plaintiff, a sergeant ordered him to be escorted to the appointment and Correa did "not succeed[] in depriving [him] of proper medical care." (ECF No. 12, p. 12). Thus, to the extent that Plaintiff brings a deliberate indifference claim based on this incident, Plaintiff was not actually denied or delayed medical treatment so as to state a claim. Notably, the Court advised Plaintiff in the initial screening order that his failure to allege a delay or denial of medical care meant that he failed to state a claim, gave him the pertinent legal standards, and granted him leave to amend. (ECF No. 7, p. 17).

Elsewhere, Plaintiff states it was Correa's "sole purpose" to keep him from ever seeing the neurologist or optometrist for medical care. (ECF No. 12, p. 15). However, he fails to specify how Correa kept him from attending any appointment, what care was delayed or denied, and the resulting effect it had on him. The Court addressed similar allegations in the initial screening order, noting that Plaintiff "fail[ed] to explain how he was denied medical care." (ECF No. 7, p. 18).

Generally, this pattern of deficiencies continues throughout the complaint, with Plaintiff either failing to indicate (1) which Defendants violated his rights; (2) if a Defendant is named, what that Defendant specifically did; (3) what serious medical need he had; and (3) what medical care was denied or delayed.

For example, Plaintiff asserts that "was left on the patio" and "the missed appointments kept piling up." (ECF No. 12, p. 13). The Court rejects these allegations once again for the same reason it rejected them in the initial screening order: "Plaintiff does not explain what serious medical need he had, what medical care he required, or which Defendants were responsible." (ECF No. 7, p. 17).

Plaintiff asserts that Castillo, Escebedo, and Viegh "forced him to choose between torturing himself with the unbearable pain that keeps him bedridden for days or forfeit the right to be seen." (ECF No. 12, p. 14). Further they refused to intervene when shown Dr. Belga's report and they "aided and abetted" Correa and Solez "by conspiring with Dr. Hamas" and Doe Defendants to "cherry-pick" Plaintiff's medical file, "violating HIPPA to quote statements prior to [his] diagnosis to perpetuate deliberate indifference." (*Id.*). And Castillo, Escebedo, and Viegh became active participants when they gave the order for Correa and Solez to leave without Plaintiff.

While it appears that Plaintiff allegations have something to do with him not being allowed to wear his sunglasses and perhaps missing medical appointments as a result, he fails to identify any of these Defendants' specific actions, let alone specify how such actions resulted in the denial of medical care for a serious need. Plaintiff raised at least some of these same allegations in his initial complaint, which the Court likewise rejected and advised him that additional specific allegations were needed as to what medical treatment was denied in order to state a claim. (ECF No. 7, p. 17 – "Plaintiff does not specify his serious medical need, what medical treatment that he was denied, nor how any specific defendant was responsible.").

Plaintiff elsewhere generally indicates that, because he cannot wear his sunglasses, he is being denied access to medical care. However, he fails to identify the Defendants involved, their specific actions, and what care he was denied. Similarly, Plaintiff states that Castillo, Goyce, and Igbinosa, were involved with a policy to not allow shades in Medical for the sole purpose of weaponizing the policy against Plaintiff "to inflict as much pain as possible." But he fails to specify what medical care was delayed or denied or provide sufficient context for how Defendants were involved in the alleged policy that accomplished this. Again, the Court

13

1 rejected similar allegations in the initial complaint: "Plaintiff does not provide any developed
2 explanation of how this policy led to him not being able to receive medical care, what specific
3 treatment he was denied, and the harm resulting from the denial." (*Id.* at 18).

4 Lastly, Plaintiff states that Castro, Dr. Singh, Dr. Igbinosa, Dr. Mai, A. Mejia, M.
5 Navarro, and M. Hamil were deliberately indifferent to his medical needs by refusing to follow
6 the neurologist's directive to permit him to shield his eyes from ambient illumination by issuing
7 him an emergency temporary chrono allowing him to wear his personal sunglasses to get to
8 medical appointments. Instead, they allowed Custody to dictate medical treatment by
9 concocting a new rule of no shades in Medical even conspiring with Custody to "cherry pick"
10 his medical file to deny him adequate medical care. He also appears to indicate that Defendants
11 Dr. Hamas, Castillo, Jane Doe 1, Sgt. Viegh, Jane Doe 2, and Sgt. Escebedo were involved in
12 him not getting the chrono.

13 While Plaintiff generally indicates that he was denied medical care based on these
14 Defendants' failure to issue him the emergency chrono, he fails to sufficiently allege what
15 medical care was denied. Notably, he fails to provide any context behind his request for the
16 chrono and the Defendants' response, including how the denial of the chrono contributed to any
17 specific denial or delay of treatment for a serious medical need; and how he was harmed. Once
18 again, the Court rejected similar allegations in the initial screening order, noting that Plaintiff
19 "fail[ed] to provide any context behind his request for the chrono and the Defendants' response,
20 what medical treatment he was denied, and how he was harmed." (*Id.* at 19).

21 In short, despite the Court's previous rejection of similar allegations, providing legal
22 standards and instruction as to what specific allegations were needed to state a claim for
23 deliberate indifference to serious medical needs, and giving Plaintiff leave to amend, Plaintiff
24 has filed a materially similar complaint with the same deficiencies and thus again fails to state
25 any deliberate indifference claim against any Defendant.

26 **D. Conditions of Confinement**

27 For his third claim, Plaintiff states that he was subjected to unconstitutional conditions
28 of confinement. (ECF No. 12, pp. 17-18). Specifically, he complains about the alleged policies

14

forbidding headwear or sunglasses on the patio.

It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer*, 511 U.S. at 832. Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. *Farmer,* 511 U.S. at 834. "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (citation and internal quotation marks omitted). Second, "a prison official must have a sufficiently culpable state of mind," which for conditions of confinement claims "is one of deliberate indifference." *Id.* (citations and internal quotation marks omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson,* 217 F.3d at 731. Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff asserts that there is a recent policy that prohibits inmates from wearing headwear on the patio, stating that it is disrespectful to not allow a man to cover his head from the elements. (ECF No. 12, p. 17). He asserts that Goyce, as the Yard Captain who oversees and signs off on policies is liable. Further, he asserts that Castillo was in charge of carrying out

1 the underground policy.

2 Plaintiff next challenges the no shades policy, which he contends was pure retaliation
3 by Castillo and Correa, and put into policy by Goyce.

4 While the Court understands that Plaintiff believes that he needs to be permitted to wear
5 headwear and sunglasses despite the policies, Plaintiff does not provide sufficient allegations to
6 indicate that his denial of this opportunity results in a sufficiently serious deprivation to state a
7 violation of Plaintiff's right against cruel and unusual punishment under the Eighth
8 Amendment. For example, Plaintiff does not specify any occasion where he was required to be
9 outside to face the elements without headwear or his sunglasses and what happened as a result.
10 Rather, the complaint indicates that Plaintiff chose not to go outside based on (at least) the no
11 sunglasses policy—and thus was not subjected to the elements. (*See id.* at 16).

12 For these reasons, Plaintiff fails to state any conditions of confinement claim against
13 any Defendant.

### E. Equal Protection

15 Within Plaintiff's first and second claim, Plaintiff alleges that Defendants violated his
16 right to equal protection under the Fourteenth Amendment, stemming from his allegations that
17 certain Defendants required him to remove his shades while inmates of different races were
18 allowed to wear theirs. (ECF No. 12, pp. 13, 15-16).

19 The Equal Protection Clause requires that persons who are similarly situated be treated
20 alike. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439 (1985); *Hartmann v.*
21 *California Dep't of Corr. & Rehab.,* 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*,
22 705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). To
23 state a claim, Plaintiff must show that Defendants intentionally discriminated against him based
24 on his membership in a protected class, *Hartmann*, 707 F.3d at 1123 *Furnace*, 705 F.3d at
25 1030, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *Thornton v. City of St. Helens*,
26 425 F.3d 1158, 1166-67 (9th Cir. 2005), *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.
27 2001), or that similarly situated individuals were intentionally treated differently without a
28 rational relationship to a legitimate state purpose, *Engquist v. Oregon Department of Agr.*, 553

U.S. 591, 601-02 (2008), *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008), *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

"[T]he general rule is that when a state actor explicitly treats an individual differently on the basis of race, strict scrutiny is applied. Under strict scrutiny, all racial classifications imposed by the government must be narrowly tailored to further compelling government interests." *Mitchell v. Washington*, 818 F.3d 436, 444 (9th Cir. 2016) (citations and internal quotation marks omitted). But even in a strict scrutiny analysis, "penological interests may still factor into the analysis of an equal protection claim" because "[t]he necessities of prison security and discipline are a compelling government interest justifying only those uses of race that are narrowly tailored to address those necessities." *Harrington v. Scribner*, 785 F.3d 1299, 1308 (9th Cir. 2015) (internal quotation marks and citation omitted).

With these standards in mind, Plaintiff indicates in the complaint that he is "black." (ECF No. 12, p. 15). Plaintiff asserts that Correa berated Plaintiff to take his sunglasses back to his cell while allowing "inmates of Hispanic descent" to wear theirs time and time again. (*Id.* at 13, 15). Elsewhere, Plaintiff states that, after a dispute in which Castillo said, "since you're pushing policy, I'm pushing policy," that "Plaintiff and other Black inmates," were berated and harassed to remove their sunglasses while other races were allowed to wear theirs. (*Id.* at 15-16).

Liberally construed for the purposes of screening, the Court concludes that these allegations of inmates of different races being treated more favorably than Plaintiff, for no apparent reason except the basis of their race, sufficiently state an equal protection claim against Defendants Correa and Castillo.

**F.    Retaliation**

Within his second claim and third claims, Plaintiff claims that his right to be free from retaliation under the First Amendment was violated by various Defendants retaliating against him. (ECF No. 12, pp. 14-18).

"Within the prison context, a viable claim of First Amendment retaliation entails five

basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted). To prevail on a retaliation claim, a plaintiff may "assert an injury no more tangible than a chilling effect on First Amendment rights." *Brodheim v. Cry*, 584 F.3d 1262, 1269-70 (9th Cir. 2009). Furthermore, "a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Id.* at 1271 (citing *Rhodes*, 408 F.3d at 568–69) (emphasis in original). "Evidence of his motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual." *Barth v. Montejo*, No. 2:19-CV-1874 DB P, 2020 WL 73407, at *2 (E.D. Cal. Jan. 7, 2020).

While prisoners have no freestanding right to a prison grievance process, *see Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," *Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy,* 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. *Rhodes,* 408 F.3d at 567; *Uribe v. McKesson*, No. 08CV01285 DMS NLS, 2011 WL 9640, at *12 (E.D. Cal. Jan. 3, 2011) ("An inmate's reporting of officer misconduct, or the attempt to do so verbally or in writing, constitutes speech or conduct entitled to First Amendment protection.").

Plaintiff states that, after Correa because aware of "Plaintiff filing multiple appeals, the discrimination and deliberate indifference became even more blatant, with [Correa] now berating the Plaintiff to take his shades back to his cell, when before he was only ordered to remove them." (ECF No. 12, p. 15). Confusingly, he asserts that Correa's retaliatory intentions

can be seen because he escorted "Plaintiff to CTC with his white shades <u>on</u> without incident, just to berate, make fun of, and taunt the Plaintiff the entire time, laughing that it was only a dental appointment that he didn't care about." (*Id.*) (emphasis added).

Upon review, these allegations are insufficient to state a retaliation claim. For the first allegation, Plaintiff's assertions are devoid of facts showing that Correa ordered him to remove his shades because he filed appeals. While the fact that Plaintiff allegedly suffered adverse action some time after he filed appeals might suggest that Correa retaliated against him, such is not enough by itself to show that Correa engaged in misconduct because of Plaintiff's speech. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (noting that "timing can properly be considered as circumstantial evidence of retaliatory intent" but there was "little else to support the inference" in that case). Importantly, Plaintiff elsewhere alleges that Correa ordered him to remove his shades—before any appeals were filed. Likewise, he says that Correa permitted him to wear his shades to a dental appointment, which contradicts, rather than supports, his contention that Correa was trying to retaliate against him for filing appeals.

Elsewhere, Plaintiff generally alleges that Castillo and Correa retaliated against him by enacting a "no shades" policy. (ECF No. 12, pp. 15-18). However, he provides no developed supporting allegations, such as facts indicating that they enacted the policy because of his protected conduct. Rather, he summarily labels their conduct "pure retaliation." (*Id.* at 18).

The Court's initial screening order noted such deficiencies based on similar allegations from his initial complaint, provide the relevant legal standards, and gave Plaintiff leave to amend. (ECF No. 7, pp. 22-24). However, despite the Court's instruction, Plaintiff has filed an amended complaint without alleging sufficient facts to state any retaliation claim.

## IV.     CONCLUSION, ORDER, AND RECOMMENDATIONS

The Court has screened Plaintiff's amended complaint and finds that it states cognizable claims against only Defendants Correa and Castillo for denying Plaintiff equal protection of the law in violation of the Fourteenth Amendment.

The Court will recommend that all other claims and Defendants be dismissed without further leave to amend. Notably, the initial screening order addressed materially similar

allegations, advised Plaintiff how they were deficient, provided applicable legal standards, and granted him leave to amend. However, Plaintiff has offered the same deficient allegations again in his amended complaint, demonstrating that further leave to amend would be futile. *See Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999) ("Liberality in granting a plaintiff leave to amend is subject to the qualification that the amendment . . . is not futile.").

Accordingly, IT IS ORDERED as follows:

1. The Clerk of Court shall assign a District Judge to this case.
2. Because Plaintiff's no longer lists Defendants Pelayo, Razo, Johnson, or Alcazar in his amended complaint, the Clerk of Court shall terminate them from the docket.

Further, IT IS RECOMMENDED as follows:

1. This case proceed against only Defendants Correa and Castillo for denying Plaintiff equal protection of the law in violation of the Fourteenth Amendment.
2. All other claims and Defendants be dismissed without further leave to amend.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than fifteen (15) pages, including exhibits. Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 18, 2025**        /s/ Erica P. Grosjean
                                     UNITED STATES MAGISTRATE JUDGE